# EXHIBIT F

FILED

AMERICAN BUILDERS, INC.,          )
          Plaintiff          )
                      )    AFFIDAVIT OF SERVICE PURSUANT
         v.                )    TO N.C. GEN. STAT. § 55D-33 AND
                      )    RULE 4(j)(6)(c) OF THE NC RULE
ALPHA PLOTTER LLC,                )    OF CIVIL PROCEDURE
          Defendant          )

Lilian L. Faulconer, being duly sworn, deposes and says as follows:

1.     Affiant is attorney for Plaintiff American Builders, Inc. ("Plaintiff") and as such is authorized by law to make this Affidavit.

2.     Defendant ALPHA PLOTTER LLC ("Defendant") is a limited liability company existing under the laws of the State of California and authorized to transact business in the State of North Carolina.

3.     A copy of the North Carolina Secretary of State's webpage for Defendant is attached as **Exhibit A**.

4.     Wenbo Zhao is a resident of California. Attached as **Exhibit B** is a copy of a complaint, verified by Wenbo Zhao, and filed by Defendant on June 27, 2024 in the United States District Court for the Central District of California, in which Wenbo Zhao verifies under penalty of perjury that, among other things, "he lives in Los Angeles, California."

5.     Pursuant to N.C. Gen. Stat. § 55D-30, as a foreign limited liability

company authorized to transact business in North Carolina, Defendant is required to continuously maintain a registered agent in the state. If the registered agent is an individual, the individual must reside in North Carolina and maintain a business address identical to the registered office, which must also be located in North Carolina.

6. As reflected in Exhibit A and Exhibit B, Defendant has failed to comply with the requirements of N.C. Gen. Stat. § 55D-30. Defendant's registered agent is Wenbo Zhao. Wenbo Zhao is not a resident of North Carolina as required by N.C. Gen. Stat. § 55D-30. Defendant has therefore failed to maintain a registered agent in North Carolina.

7. Pursuant to N. C. Gen. Stat. § 55D-33, when an entity required to maintain a registered agent under N.C. Gen. Stat. § 55D-30 fails to do so, the North Carolina Secretary of State becomes an agent of the entity "upon whom any such process, notice or demand may be served." N. C. GEN. STAT. § 55D-33. Service is made upon the Secretary of State under N. C. Gen. Stat. § 55D-33(b) by delivering to and leaving with the Secretary of State of any clerk authorized by the Secretary of State to accept service of process copies of the process, notice, or demand.

8. Copies of the Summons, Complaint, Affidavit in Attachment Proceeding, Order of Attachment, and Summons to Garnishee and Notice of Levy in

this matter were sent for service via Certified Mail/Return Receipt Requested ("Certified Mail"), addressed to the North Carolina Secretary of State as service agent for Defendant.

9.      The Summons, Complaint, Affidavit in Attachment Proceeding, Order of Attachment, and Summons to Garnishee and Notice of Levy were in fact received by the North Carolina Secretary of State on July 8, 2024, as evidenced by the signed green card attached as **Exhibit C.**

10.     Also attached as **Exhibit D** is a copy of the North Carolina Secretary of State letter to ALPHA PLOTTER LLC noting the documents were received by the Service of Process Section for the Secretary of State on July 10, 2024.

11.     Pursuant to N. C. Gen. Stat. § 55D-33(b), service is effective on an entity served via the Secretary of State on the date the Secretary of State is served.

12.     Service of process on Defendant was obtained on July 10, 2024 by certified mail pursuant to the provisions of N.C. Gen. Stat. § 55D-33(b) and Rule 4(j)(6)(c) of the North Carolina Rules of Civil Procedure.

13.    Plaintiff incurred $61.60 in costs for service of process on Defendant.

This the 17th day of July, 2024.

*Lilian L. Faulconer*

Lilian L. Faulconer
N.C. State Bar I.D. No.: 57886
E-mail: docketCR@wardandsmith.com *
E-mail: llfaulconer@wardandsmith.com **
For the firm of
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
Telephone: (252) 215-4000
Facsimile: (252) 215-4077
Attorneys for American Builders, Inc.

PITT COUNTY, NORTH CAROLINA

Sworn to (or affirmed) and subscribed before me this day by Lilian L. Faulconer.

Date *July 17th 2024*

(Official Seal)

*Norreen S. Furness*
Signature of Notary Public
Norreen S. Furness
My commission expires: 8/25/2028

---

* This email address must be used in order to effectuate service under Rule 5 of the North Carolina Rules of Civil Procedure.
** Email address to be used for all communications other than service.

# EXHIBIT A

• File an Annual Report/Amend an Annual Report • Upload a PDF Filing • Order a Document Online • Add Entity to My Email Notification List • View Filings • Print a Pre-Populated Annual Report form • Print an Amended a Annual Report form

# Limited Liability Company

**Legal Name**
ALPHA PLOTTER LLC

# Information

**SosId:** 2501680
**Status:** Current-Active ⓘ
**Date Formed:** 10/7/2022
**Citizenship:** Foreign
**State of Incorporation:** CA
**Annual Report Due Date:** April 15th
Current**Annual Report Status:**
**Registered Agent:** Zhao, Wenbo

# Addresses

| **Mailing** | **Principal Office** | **Reg Office** |
|---|---|---|
| 119 N 2nd Ave | 119 N 2nd Ave | 1512 Hooker Road |
| Upland, CA 91786-6019 | Upland, CA 91786-6019 | Greenville, NC 27834-6323 |

**Reg Mailing**
1512 Hooker Road
Greenville, NC 27834-6323

# Company Officials

All LLCs are managed by their managers pursuant to N.C.G.S. 57D-3-20.

**Chief Executive Officer**
Wenbo  Zhao
5470 ROBIN CIR
YORBA LINDA  CA  92886

# EXHIBIT B

1   MICHAEL A. DiNARDO (#216991)
2   mdinardo@yklaw.us
    YK LAW, LLP
3   445 S. Figueroa St, Suite 2280
4   Los Angeles, CA, 90071
    Office: 213-401-0970
5

6   Attorneys for Plaintiff ALPHA PLOTTER, LLC

7

8                   UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

11

12  ALPHA PLOTTER, LLC, a              )   CASE NO. 5:24-CV-01350
13  California limited liability company )
                                        )
14           Plaintiff,                 )   VERIFIED COMPLAINT FOR RICO
15                                      )   VIOLATIONS [18 U.S.C. §1962(a), (b),
        v.                              )   AND (c)] AND RELATED CLAIMS
16                                      )
17  BO TIAN, an individual,            )   DEMAND FOR JURY TRIAL
                                        )
18                                      )
           Defendant.                   )
19                                      )

20

21

22

23

24

25

26

27

28
            VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL
                                        1

1    For its Complaint, Alpha Plotter, LLC ("Alpha Plotter"), by and through its

2  undersigned counsel of record, asserts the following for its Verified Complaint and Jury

3  Demand against Bo Tian ("Mr. Tian").  All allegations are made upon information and

4  belief unless otherwise stated.  Alpha Plotter's investigation of the unfortunate, unlawful

5  events at issue is ongoing; Alpha Plotter reserves all of its rights to amend, supplement,

6  and/or withdraw allegations as necessary or otherwise appropriate.

7  <div align="center">**THE PARTIES**</div>

8    1.    Alpha Plotter is a limited liability company organized under the laws of

9  California with its identified principal place of business located at 123 N 2ND AVE.,

10  UPLAND, CA 91786.

11    2.    Mr. Tian is a Chinese national who, upon information and belief, presently

12  lives in Greenville, North Carolina pursuant to a temporary green card.  Upon

13  information and belief, Mr. Tian resides in or around Greenville, North Carolina.

14  <div align="center">**JURISDICTION AND VENUE**</div>

15    3.    This Court has subject matter jurisdiction in this Court pursuant to 28 U.S.C.

16  §1331, because one or more of Alpha Plotter's claims arise under the laws of the United

17  States, and the Court possesses supplemental jurisdiction of Alpha Plotter's remaining

18  state-law claims.

19    4.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391

20  because Plaintiff is a California limited liability company with its specified principal

21  place of business located in Upland, California, a substantial part of the events or

22  omissions giving rise to the claim occurred there, and/or a substantial part of property

23  that is the subject of the action is situated there.

24    5.    This Court has personal jurisdiction over Mr. Tian, because: (i) Mr. Tian

25  formerly and knowingly served as the Chief Executive Officer ("CEO") and Managing

26  Member of a California limited liability company, and he (ii) intentionally and

27  purposefully directed his tortious and otherwise improper conduct to harm a California

28

<div align="center">VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL</div>
<div align="center">2</div>

1   limited liability company with its principal place of business identified within California;

2   the claims arise out of and relate to Mr. Tian's forum-related activities as the CEO and

3   Managing Member of a California limited liability company; and the exercise of

4   jurisdiction comports with fair play and substantial justice.

5        6.    On information and belief, Mr. Tian possesses a California driver's license

6   and has for several years; he regularly has engaged in business in California, including

7   through his California counsel that has communicated with Alpha Plotter concerning Mr.

8   Tian's involvement in Alpha Plotter.

9                            **GENERAL ALLEGATIONS**

10     **Background**

11        7.    On or about May 26, 2021, Alpha Plotter was registered as a California

12   limited liability company.  Defendant, Bo Tian, was the Organizer of Alpha Plotter on the

13   registration filing.  See Exhibit 4.

14        8.    On October 7, 2022, Alpha Plotter filed an Application for Certificate of

15   Authority for Limited Liability Company with the North Carolina Secretary of State.  See

16   Exhibit 5.  Alpha Plotter's principal place of business is identified as being located in

17   Upland, California.   Mr. Tian is identified as the registered agent for service, and his

18   Business Address is identified as 119 N 2ND AVE Upland CA, 91786-6019.  Mr. Tian

19   signed and filed the application with the North Carolina Secretary of State.

20        9.    Alpha Plotter constructs bitcoin mining farms.

21       10.   Alpha Plotter also builds and rents space to bitcoin miners.

22       11.   Alpha Plotter also sells equipment used in bitcoin mining, which equipment

23   is manufactured by another party in China.

24       12.   When Alpha Plotter was formed, it had five members, including Mr. Tian.

25       13.   Mr. Tian did not invest any money in Alpha Plotter.  The remaining

26   members invested a total of approximately $2.5 million.

27

28

VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL

3

14.     Mr. Wenbo Zhao is a member of Alpha Plotter; he lives in Los Angeles, California.  The remaining members each reside in China.  All of the remaining members of Alpha Plotter entrusted Mr. Tian with the responsibility to run the business on a day-to-day basis.

15.     Mr. Tian was appointed the General Manager and CEO of Alpha Plotter.

16.     As the CEO and General Manager of Alpha Plotter, Mr. Tian ran the company on a day-to-day basis and had full access to, and control of, Alpha Plotter's bank accounts and systems.

**The Misappropriation of Funds**

17.     Alpha Plotter's first bank account was opened at Bank of America (the "First Company Account"). The last four digits of the First Company account were 1008.

18.     In 2023, the First Company Account was closed.

19.     Mr. Tian was the only person with authorization or access to the First Company Account.

20.     In 2023, another bank account was opened by Mr. Tian in Alpha Plotter's name at Chase (the "Second Company Account").  The last four digits of the Second Company Account are 7989.

21.     Mr. Tian had full access to, and control of, the Second Company Account.

22.     Unbeknownst to anyone else at the company, in 2023 Mr. Tian opened a bank account in Alpha Plotter's name at Wells Fargo (the "Secret Company Account"). The last four digits of the Secret Company Account were 5973.  Mr. Tian was the only person with any access and/or authorization to the Secret Company Account.

23.     At all relevant times, Mr. Tian was the only person affiliated with Alpha Plotter that knew of the Secret Company Account, which, upon information and belief, was opened for the sole and exclusive purpose of secretly, illegally, and improperly diverting funds from Alpha Plotter to Mr. Tian.

24.     Alpha Plotter recently discovered that from at least September 10, 2021, through January 31, 2024, Mr. Tian diverted and transferred funds on an ongoing and continual basis from the First Company Account, Second Company, and Secret Company Account to his personal account at Chase Bank (the "Tian Bank Account") for a total amount of approximately $5.3 million.

25.     Alpha Plotter also recently discovered that, unbeknownst to the other members, Mr. Tian opened another bank account in February 2024 under Alpha Plotter's name with First Bank in North Carolina.  The last four digits of this account are 1611. Upon information and belief, this account was closed in May 2024.

26.     Mr. Tian's illegal and otherwise improper conduct was not disclosed by Mr. Tian, and he took affirmative steps to conceal his conduct.

27.     In late 2023, Alpha Plotter's other members first suspected Mr. Tian's potential impropriety when multiple vendors (e.g., suppliers of equipment purchased by Alpha Plotter and resold to customers in the U.S.) reported that they had not received payment.

28.     One member, Mr. Meng, on behalf of the remaining members, raised this issue to Mr. Tian and inquired as to why Alpha Plotter's vendors were not being paid. Mr. Tian informed Mr. Meng that such non-payments to vendors were because customers were not paying for equipment.

29.     Mr. Meng was suspicious of Mr. Tian's explanation, because Alpha Plotter's agreements to sell equipment generally are with high credit-level customers (e.g., Town of Wake Forest, City of Rocky Mount).

30.     In January 2024, Mr. Meng asked Mr. Tian to account for the customer payments, but the response given by Mr. Tian was that payments were in process with the bank.  Mr. Tian then forged one or more bank certificates.

31.     On January 31, 2024, the remaining members of Alpha Plotter voted to remove Mr. Tian from his role as Chief Executive Officer, and Alpha Plotter took away

1   his bank account management authority.  He remained the General Manager of Alpha

2   Plotter.

3       32.    The remaining Members of Alpha Plotter then conducted a preliminary

4   investigation, with the assistance of a third-party accountant.  Through that investigation,

5   the remaining members learned of the Secret Bank Account, and that Mr. Tian was

6   directing customers to send payments to that account, rather than the Second Bank

7   Account, and then Mr. Tian was transferring such funds to his personal account.

8       33.    Through the investigation, the remaining Members of Alpha Plotter also first

9   learned that Mr. Tian had been transferring funds improperly and without authorization

10  from the First Company Bank Account and Second Company Bank Account to the Tian

11  Bank Account.

12      34.    All total, upon information and belief, Mr. Tian diverted approximately $5.3

13  million to himself on an ongoing basis over a period of approximately two years.

14      35.    The document attached hereto as Exhibit 1 summarizes unlawful and illegal

15  loans of company funds that Mr. Tian made to himself using the mails and wires from

16  September 10, 2021, through January 31, 2024, which transfers Mr. Tian fraudulently

17  and improperly characterized as loans, which transfers total (at least) $1,358,989.

18      36.    The document attached hereto as Exhibit 2 summarizes unlawful and illegal

19  transfers of company funds that Mr. Tian made to himself using the mails and wires from

20  October 5, 2021, through December 31, 2023, which transfers total (at least) $3,888,821.

21      37.    The thus-far discovered unauthorized and improper loans and transfers to

22  Mr. Tian caused Alpha Plotter to pay to Mr. Tian a total of (at least) $5,247,810.

23      38.    In addition, the document attached hereto as Exhibit 3 summarizes unlawful

24  and illegal transfers of company funds that Mr. Tian caused to be transferred improperly

25  using the mails and wires to third parties for his indirect benefit, which amounts total

26  $980,231.

27

28

39.   To conceal his ongoing theft and embezzlement, Mr. Tian would periodically pay small amounts of funds back to Alpha Plotter's account, so it would appear as if there was ongoing, incoming cash flow.

40.   In all, Mr. Tian deposited a total of approximately $2.7 million into the Second Company Account, meaning approximately $2.6 million in cash that he improperly transferred to himself remains improperly diverted.

41.   In addition, under his management, and as a direct result of his theft and embezzlement of funds, in his capacity as CEO and General Manager, Mr. Tian failed to timely pay (or cause to be paid) vendors, rent and other business expenses, including the Chinese company that manufactured equipment for Alpha Plotter's resale in the United States.

42.   Mr. Tian's diversion of funds out of Alpha Plotter's bank accounts has depleted the company accounts and left the other members now having to deal with the fallout.

43.   Mr. Tian has an American Express account under his own name.  Alpha Plotter has recently learned that Mr. Tian used the First Company Account and Second Company Account to pay $10,000 to $25,000 per month of his personal expenses over an approximately two-year period.  On information and belief, the total amount improperly paid to Mr. Tian's personal American Express account is $400,000 – $500,000.

**The Removal of Mr. Tian**

44.   Following his removal by Alpha Plotter, on or about May 23, 2024, Mr. Tian's attorney sent a letter, stating that he was resigning his positions with and membership in Alpha Plotter.  A true and accurate copy of that letter is attached hereto as Exhibit 6.  Attorney Vega, the attorney who wrote the letter on behalf of Mr. Tian, has a registered office address at 119 N 2ND AVE Upland CA, 91786-6019, the same address listed as Mr. Tian's business address in the North Carolina application (Exhibit 5).

45.     Upon information and belief, Mr. Vega has represented and continues to represent Alpha Plotter in its corporate matters, and he now is improperly purporting the represent Mr. Tian in matters adverse to Alpha Plotter, which matters are substantially similar to the prior representation of Alpha Plotter while Mr. Vega's representation of Alpha Plotter remains ongoing.

<div align="center">

**COUNT I**

**BREACHES OF FIDUCIARY DUTIES**

</div>

46.     Alpha Plotter repeats and re-alleges the foregoing paragraph 1 through 45 as if repeated and fully set forth herein.

47.     Mr. Tian was the Chief Executive Officer and General Manager of Alpha Plotter.

48.     Mr. Tian owed fiduciary duties of care and loyalty to Alpha Plotter.

49.     Because Alpha Plotter was organized under the laws of California, under the internal affairs doctrine, the law of California applies to this Count.

50.     Mr. Tian breached his fiduciary duties of care and loyalty to Alpha Plotter.

51.     Mr. Tian breached his fiduciary duty of loyalty to Alpha Plotter by, inter alia, stealing monies from Alpha Plotter's bank accounts, setting up the Secret Bank Account for purposes of improperly diverting monies to himself, causing the company to pay for his personal expenses, failing to pay Alpha Plotter's expenses to vendors on account of his diversion and theft of funds, and failing to provide access to Alpha Plotter's property upon his separation from the company.

52.     Mr. Tian breached his fiduciary duty of care to Alpha Plotter by, inter alia, failing to pay bills and otherwise operate the business in an adequate manner.

53.     Mr. Tian breached fiduciary duties by taking steps to compete with and against Alpha Plotter while he served as its CEO and General Manager.

54.     Mr. Tian's breaches of fiduciary duties were knowing and intentional and meant to harm Alpha Plotter and provide personal benefits to Mr. Tian.

<div align="center">

VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL

8

</div>

55.    Alpha Plotter has been injured and damaged as a direct and proximate result of Mr. Tian's breaches of fiduciary duties.

## COUNT II

### UNJUST ENRICHMENT

56.    Alpha Plotter repeats and re-alleges the foregoing paragraph 1 through 55 as if repeated and fully set forth herein.

57.    Mr. Tian received benefits as a result of the improper and unlawful scheme. Mr. Tian improperly received money directly from Alpha Plotter and indirectly from certain of its customers.

58.    The benefits received by Mr. Tian were obtained at the direct expense of Alpha Plotter through ongoing embezzlement, theft and related malfeasance.

59.    It would be unfair and unjust for Mr. Tian to retain any of the funds that he misappropriated and/or embezzled from Alpha Plotter.

60.    It would be unfair for Mr. Tian to benefit from and not repay amounts improperly expensed to the company for his personal expenses.

## COUNT III

### CONSTRUCTIVE FRAUD

61.    Alpha Plotter repeats and re-alleges the foregoing paragraph 1 through 60 as if repeated and fully set forth herein.

62.    Mr. Tian was the CEO and Managing Member of Alpha Plotter, and he owed fiduciary duties in such roles.

63.    Pursuant to such roles, Mr. Tian possessed an affirmative duty to disclose certain information to the company and remaining members, including his knowledge of ongoing theft, embezzlement and related malfeasance.

64.    Mr. Tian was aware of this ongoing theft, embezzlement and related malfeasance, but he failed to disclose it to the company or its remaining members.

1    65.    By failing to disclose such information, Mr. Tian was able to continue his

2    ongoing, unlawful and improper conduct to the detriment of Alpha Plotter.

3    66.    Alpha Plotter reasonably relied upon Mr. Tian's failure to disclose as

4    meaning he was not aware of any ongoing unlawful conduct by himself or others.

5    67.    Alpha Plotter was damaged and injured as a direct and proximate result of

6    Mr. Tian's failure to disclose.

7    68.    Mr. Tian's failure to disclose was intentional and specifically intended to

8    conceal his ongoing unlawful and otherwise improper conduct.

9    <center>**COUNT IV**</center>

10   <center>**FRAUD**</center>

11   69.    Alpha Plotter repeats and re-alleges the foregoing paragraph 1 through 68 as

12   if repeated and fully set forth herein.

13   70.    When Mr. Meng and the remaining members of Alpha Plotter first learned

14   that at least one necessary vendor had not been paid, he confronted Mr. Tian and asked

15   what was happening.

16   71.    Rather than disclosing the truth, Mr. Tian instead falsely misrepresented that

17   customers had not paid, when they had in fact paid into the Secret Bank Account for the

18   benefit of Mr. Tian.

19   72.    Alpha Plotter by and through Mr. Meng reasonably relied upon Mr. Tian's

20   explanation for a period of time.

21   73.    During the period of reliance, Mr. Tian continued to misappropriate,

22   embezzle and otherwise divert funds from the company and for his personal benefit, with

23   Mr. Tian's last improper payment to himself taking place on January 31, 2024, the very

24   day that Alpha Plotter voted to remove Mr. Tian from his role as Chief Executive Officer

25   and Alpha Plotter took away his bank account management authority.

26   74.    Alpha Plotter was injured and damaged as a direct and proximate result of

27   Mr. Tian's fraud.

28

<center>VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL</center>
<center>10</center>

## COUNT V

## CONVERSION

75.     Alpha Plotter repeats and re-alleges the foregoing paragraph 1 through 74 as if repeated and fully set forth herein.

76.     Mr. Tian has engaged in the repeated, unauthorized assumption and exercise of the right of ownership over funds and receipt of receivables that rightfully belong to Alpha Plotter, and he has done so the detriment of Alpha Plotter's right of ownership over the same.

77.     The funds improperly transferred from the First Company Account and Second Company account may be sufficiently identified through evidence of the specific source, specified amount, and specific destination of the funds in question.

78.     The funds improperly submitted to the Secret Bank Account and then transferred to and/or improperly used by Mr. Tian may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question.

79.     The funds used to pay for Mr. Tian's personal expenses may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question.

## COUNT VI

## CIVIL RICO, 18 U.S.C. § 1962(a), 1962(b), and 1962(c)

80.     Alpha Plotter repeats and re-alleges the foregoing paragraph 1 through 79 as if repeated and fully set forth herein.

81.     The claim of federal RICO violations identified in this Court arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

82.     At all relevant times, Alpha Plotter was a "person" within the meaning of RICO, Title 18 United States Code Sections 1961(3) and 1964(c), and Mr. Tian was a

1  "person" within the meaning of RICO, Title 19 United States Code Sections 1961(3) and
2  1962(c).

3      83.    At all times relevant to this Complaint, there was an enterprise established
4  for purposes of misappropriating, embezzling, and improperly diverting Alpha Plotter's
5  funds, which enterprise was separate and apart from the illegal acts undertaken to
6  effectuate that enterprise.

7      84.    Mr. Tian constituted an "enterprise" as the term is defined in 18 U.S.C. §
8  1961(4), that is an individual associated in fact with the enterprise. See, also, *Odom v.*
9  *Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007) ("A single 'individual' is an
10  enterprise under RICO.").

11      85.    The function, purpose and goal of the unlawful enterprise was to cause
12  Alpha Plotter's funds to be misappropriated in favor of Mr. Tian, through, inter alia, the
13  use of improper and unlawful transfers from Alpha Plotter's bank accounts to his, use of
14  company's funds to pay for Mr. Tian's personal expenses, and the transfer of customer
15  payments to the Secret Bank Account, to be transferred to Mr. Tian and/or otherwise used
16  for his personal benefit.

17      86.    The enterprise satisfies closed-ended continuity. The enterprise was created
18  in or around September 10, 2021, and it continued through Mr. Tian's removal on
19  January 31, 2024, when he ceased to have the necessary access to continue the unlawful
20  enterprise.

21      87.    Before and during the enterprise's operations, Mr. Tian failed to disclose the
22  enterprise and its activities and actively concealed the enterprise and its activities. When
23  confronted, Mr. Tian lied and knowingly made inaccurate statements of fact for purposes
24  of further concealing the enterprise's activities.

25      88.    The common purpose of the enterprise was to divert funds from Alpha
26  Plotter to Mr. Tian and for Mr. Tian's benefit.

27

28

VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL
12

89.     At all relevant times, Mr. Tian engaged in "racketeering activity" within the meaning of Title 18 United States Code § 1961(1), by engaging in two or more of the acts set forth above and/or described below within the relevant period.

90.     The acts set forth above and/or those identified herein below constitute a violation of one or more of the following statutes: Title 18 United States Code Section 1341 (mail fraud) and Title 18 United States Code Section 1343 (wire fraud).  Mr. Tian caused hundreds of unlawful payments to be made via wire transfer to himself, through the use of interstate wires, over a period of years.

91.     Each such payment was, upon information and belief, made in furtherance of the fraudulent scheme and had the same or similar purpose, results, participant, and victim.

92.     Mr. Tian had specific knowledge that the mails and wires were being utilized in furtherance of the overall purpose of the scheme to defraud; he directed and caused such wires to be made.

93.     Mr. Tian knowingly and actively participated in the management of the enterprise.  Mr. Tian caused the improper payments to be made, purportedly in his role as CEO of Alpha Plotter, and he knowingly and intentionally received the funds.

94.     Mr. Tian acted with the intent to deprive Alpha Plotter of its property and engaged in a scheme or artifice to defraud, as that term is defined in 18 U.S.C. § 1346.

95.     The acts alleged are related to each other by virtue of common participant, common victim, common methods of commission, common purpose, and common results.

96.     As a direct and proximate result of the violations of Title 18 United States Code Sections 1962(a), 1962(b), and 1962(c) by Mr. Tian, Alpha Plotter has been injured within the United States and have incurred millions of dollars of damages.

97.     Alpha Plotter has suffered an injury to their business or property within the United States within the meaning of 18 U.S.C. § 1964, by actions of Mr. Tian in violation of 18 U.S.C. § 1962(c).

98.     There is a direct causal relationship between Mr. Tian's participation in the racketeering activity and the injury suffered by Alpha Plotter. Specifically, Alpha Plotter was deprived of millions of dollars in funds, which funds were improperly and illegally taken by Mr. Tian and/or unlawfully diverted for his personal benefit.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Alpha Plotter, demands judgment as follows as against Mr. Tian:

1.     An award of actual damages against Mr. Tian in an amount to be proved at trial;

2.     An order disgorging Mr. Tian of all misappropriated funds and ordering them returned to Alpha Plotter;

3.     Temporary and permanent injunctive relief, including an order freezing Mr. Tian's bank accounts and other assets and appointing a receiver to preserve and marshal Mr. Tian's assets.

4.     Temporary and permanent injunctive relief, removing Mr. Tian from any access to Alpha Plotter's bank accounts and other assets and providing access to a duly-authorized representative of Alpha Plotter;

5.     An award granting Alpha Plotter its costs, disbursements and reasonable attorney's fees incurred herein to the extent permitted by law;

6.     An award granting Alpha Plotter all available damages and other relief allowed under the RICO statutes;

7.     An award granting Alpha Plotter punitive and/or exemplary damages to the extent permitted by law; and

1    8.    Any such other and further relief as the Court deems equitable and just under

2  the circumstances.

3

4                          **DEMAND FOR JURY TRIAL**

5        Alpha Plotter requests and demands a jury trial for any and all matters that may

6  lawfully be submitted to a jury.

7

8  Dated:   June 26, 2024          Respectfully submitted:

9                                  YK LAW, LLP

10

11                                 By:___/s/ Michael A DiNardo_____
                                       Michael A. DiNardo, Esq.
12

13                                 Samuel L. Blatnick (Pro Hac Vice to be filed)
                                       (sblatnick@lucbro.com)
14                                 Ian Liao
15                                     (iliao@lucbro.com)
                                   Anne Melton (Pro Hac Vice to be filed)
16                                     (amelton@lucbro.com)
17                                 111 Broadway, Suite 807
18                                 New York, NY 10006
                                   (732) 712-2708
19

20                                 Attorneys for Plaintiff Alpha Plotter, LLC

21

22

23

24

25

26

27

28
                    VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL
                                              15

## VERIFICATION

I,   WENBO ZHAO   , declare as follows:

1.       I am a member of the Plaintiff LLC in the present case.

2.       I have personal knowledge of the facts set forth in the foregoing Complaint.

3.       I verify under penalty of perjury that the factual statements in this Complaint are true and correct to the best of my knowledge, information, and belief.

Dated:  June 26, 2024

_____
WENBO ZHAO

VERIFIED COMPLAINT FOR RICO VIOLATIONS AND DEMAND FOR JURY TRIAL
16

# EXHIBIT C



# EXHIBIT D



*State of North Carolina*
*Department of the Secretary of State*

ELAINE F. MARSHALL
SECRETARY OF STATE

July 11, 2024

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

ALPHA PLOTTER LLC
119 N 2nd Ave.
Upland, CA 91786-6019

Re:  ALPHA PLOTTER LLC
     SOS File Number:     S202419200002
     Docket Number:     24 CVS 1839

Ladies and Gentlemen:

Enclosed please find a Summons and Complaint, Affidavit in Attachment Proceeding, Order of Attachment and Summons to Garnish and Notice of Levy served on the Secretary of State as statutory agent for service of process for the entity referenced above.

The Service of Process Section of the Department of the Secretary of State on July 10, 2024, received these documents. The Secretary of State is required by law to forward these documents to the entity referenced above. Pursuant to N.C.G.S. §55D-33, "Service on an entity under this subsection is effective for all purposes from and after the date of the service on the Secretary of State."

           Sincerely yours,

           *Loraine Moss*
           Service of Process Agent

Enclosure

cc:
Ward & Smith, P.A.
P.O. Box 8088
Greenville, NC 27835-8088

TWO SOUTH SALISBURY STREET
PO BOX 29622, RALEIGH, NC 27626-0622
919-814-5400 · FAX 919-807-2063
WWW.SOSNC.COM